53 F.3d 346
NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
 Melvin L. COOPER, Petitioner,
v.
DEPARTMENT OF the ARMY, Respondent.
 No. 94-3124.
 United States Court of Appeals, Federal Circuit.
 April 11, 1995.
Rehearing Denied Aug. 9, 1995
 
 Before RICH, CLEVENGER, and BRYSON, Circuit Judges.
 PER CURIAM.
 
 I. DECISION
 
 1
 Melvin L. Cooper (Cooper) seeks review of the 30 June 1993 initial decision of the Administrative Judge (AJ) of the Merit Systems Protection Board (Board) in Docket Nos. DC0752930139-I-1 and DC0752930307-I-1. In the initial decision, the AJ affirmed the decisions of the Department of the Army (agency) to suspend Cooper for thirty days effective 25 October 1992 and to remove Cooper from his position at the U.S. Army Belvoir Research, Development, and Engineering Center (Fort Belvoir) effective 9 February 1993. The AJ's decision became the final decision of the Board on 19 November 1993. We affirm.
 
 II. BACKGROUND
 
 2
 Cooper was employed as a general engineer, GS-801-12, at Fort Belvoir. The present appeal concerns Cooper's thirty-day suspension from 25 October to 23 November 1992, and his subsequent removal from federal service effective 9 February 1993.
 
 III. THE THIRTY-DAY SUSPENSION
 
 3
 Larry J. Jackson (Jackson), Chief, Reliability and Maintainability Branch, issued to Cooper a Notice of Proposed Removal dated 19 August 1992. The 19 August Notice contained the following charges:
 
 
 4
 (1) disobeying orders;
 
 
 5
 (2) absence without leave (AWOL); and
 
 
 6
 (3) sleeping on duty.
 
 A. Disobeying Orders
 
 7
 Jackson charged Cooper with failure to obey orders concerning required deadlines of assigned projects. In particular, Cooper failed to meet deadlines for a memorandum on Test Analyze and Fix (TAAF) testing. A draft of the memorandum was due 12 June 1992, and a final version was due 19 June 1992. As of 20 July 1992, Cooper had not submitted even the draft memorandum.
 
 
 8
 Cooper was also charged with failure to obey orders concerning working on grievances during official duty time. On 18 May 1992, Cooper returned to work after a suspension. During June and July of 1992, Cooper worked on a grievance related to his prior suspension rather than working on the TAAF project. He did this despite receiving a direct order not to work on the grievances during official duty time. Grievance-related material found in Cooper's computer directory suggested that the material had been written during working hours.
 
 B. AWOL
 
 9
 As of 24 April 1992, Cooper had been on leave restriction because of his excessive use of sick leave and his frequent absences from work. Nevertheless, Cooper was absent without leave for two hours on 9 July 1992.
 
 C. Sleeping on Duty
 
 10
 The record contains uncontroverted testimony that co-workers observed Cooper sleeping on at least three occasions while on duty. Besty Holbert, a fellow employee, and Jackson observed Cooper sleeping on 15 July 1992; Jackson observed Cooper sleeping on 27 July 1992; and Clarence Meese, the division chief, and Jackson observed Cooper sleeping on 4 August 1992.
 
 D. The Resulting Suspension
 
 11
 Cooper was not actually removed from federal service pursuant to the 19 August 1992 Notice. Martin E. Falk (Falk), Deputy for Center Operations, decided that a thirty-day suspension was appropriate. He reached this decision after considering the oral and written replies made by Cooper and his attorney, Jerry Goldstein, on 10 September 1992 and 30 September 1992. Falk informed Cooper of his decision in a Notice of Decision dated 22 October 1992. Cooper's 30-day suspension from 25 October to 23 November 1992 followed.
 
 IV. THE REMOVAL EFFECTIVE 9 FEBRUARY 1993
 
 12
 Cooper was removed from federal service after Jackson leveled two additional charges against him, and Dan Causey, Jr. (Causey), Associate Technical Director for Engineering and Acquisition, sustained the charges. See "Notice of Proposed Removal," 4 Dec. 1992, and "Notice of Decision--Removal," 8 Feb. 1993, respectively. Specifically, Causey sustained the charges of being AWOL and making false statements to a supervisor.
 
 A. AWOL
 
 13
 Cooper does not deny that he was absent without leave on 16 October 1992 for eight hours.
 
 B. Making False Statements to a Supervisor
 
 14
 On 16 October 1992, Cooper told his supervisor, Jackson, that he intended to come to work. He did not, however, show up. In fact, the Board found that Cooper had traveled in a direction away from his place of work. Jackson thus charged Cooper not only with being AWOL for that day, but also with making false statements to a supervisor.
 
 
 15
 Cooper had an assignment due on 16 October 1992. Substantial evidence in the record supports the notion that he had a habit of calling in sick or requesting last-minute leave on days when he had a project due. Substantial evidence also supports the charge that Cooper was lying to Jackson on 16 October when he told Jackson that he would come to work.
 
 
 16
 On 19 October 1992, Jackson found out that Cooper had sent his assignment in by facsimile at 5:05 p.m. on 16 October 1992. Contrary to what Cooper had told Jackson, the facsimile indicated that it had been sent from Bel Air, Maryland, bolstering both the AWOL and falsification charges.
 
 
 17
 C. The Adequacy of the 4 December 1992 Notice
 
 
 18
 Cooper challenges the adequacy of the notice that he received concerning the sustained charges. A federal employee cannot be removed from federal service based on charges that are not raised in the notice of proposed adverse action given to the employee by the agency. 5 U.S.C. Sec. 7513(b)(1) (1988). In other words, the Board cannot consider or sustain charges that are not found in the notice of a proposed adverse action.
 
 
 19
 Cooper contends that the removal notice does not contain statements relating to "lies." Thus, he argues, the notice of proposed removal did not adequately put him on notice of the charges against him. We find these arguments to be without merit.
 
 
 20
 A Notice of Proposed Removal, dated 4 December 1992, from Jackson, preceded the removal effective 9 February 1993. Cooper's hypercritical reading of that Notice is unjustified. The Notice clearly states the charges: being AWOL and making false statements to a supervisor. It then states, in effect, Cooper told Jackson "A" when the truth was "B." The Notice thereby states the specific reasons in sufficient detail to allow Cooper to make an informed reply. In was not necessary for Jackson to go on to specifically state, "Thus, Cooper made a false statement to Jackson." When a conclusion is so clearly implied from the preceding statements, the Notice need not expressly state that conclusion.
 
 
 21
 Additionally, Causey twice extended the time given to Cooper for replying to the Notice; rather than seven days, he was given forty-three days to reply. Cooper could have cleared up any ambiguities during that time. This is particularly true since Causey logged over eighteen hours of discussions with Cooper during the forty-three-day period. Also, Causey accepted documents from Cooper through 26 January 1993--fifty-four calendar days after the Notice date.
 
 
 22
 D. The Ex Parte Meeting that Included Causey
 
 
 23
 Cooper asserts that an improper ex parte meeting took place on or about 8 December 1992. Apparently the following people attended that meeting: Causey (the deciding official), Jackson (Cooper's supervisor and the proposing official), Sam Shelton (Shelton) (an agency labor counselor), and Verda Sullivan (Sullivan) (a technical representative of Management-Employee Relations).
 
 
 24
 Improper ex parte communications with the agency official who makes the final determination concerning a proposed adverse action may provide grounds to overturn a decision. The other parties at the meeting must have sought to improperly influence the deciding official to remove the petitioner. See, e.g., Sullivan v. Department of Navy, 720 F.2d 1266 (Fed.Cir.1983).
 
 
 25
 We do not believe that any improper ex parte meetings took place. In addition, as previously stated, Cooper, after receiving the 4 December 1992 Notice of Proposed Removal, had at least ten ex parte meetings with Causey spanning more than eighteen hours. We have considered these ex parte meetings between Cooper and Causey while considering the effect of the ex parte meeting of Causey, Jackson, Shelton, and Sullivan. We conclude that this latter ex parte meeting does not provide a basis for overturning the Board's decision.
 
 
 26
 E. The Reasonableness of the Disciplinary Action
 
 
 27
 It is well established that the selection of a penalty for employee misconduct is left to the sound discretion of the agency. See, e.g., Washington v. Department of Army, 813 F.2d 390 (Fed.Cir.), cert. denied, 484 U.S. 985 (1987). We hold that the agency's removal of Cooper for being AWOL and lying to a supervisor was appropriate and not so unreasonable as to constitute an abuse of discretion, particularly in view of his prior problems.[1] See, e.g., id.; cf. Beverly v. United States Postal Service, 907 F.2d 136 (Fed.Cir.1990) (removal for one day of AWOL and for fraudulently claiming sick leave for that day).
 
 V. CONCLUSION
 
 28
 Our review of Board decisions is defined and limited by statute. We must affirm the Board's decision unless it is:
 
 
 29
 (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;
 
 
 30
 (2) obtained without procedures required by law, rule, or regulation having been followed; or
 
 
 31
 (3) unsupported by substantial evidence.
 
 
 32
 5 U.S.C. Sec. 7703(c) (1988).
 
 
 33
 We have carefully considered the extensive record submitted by Cooper in his challenge to the Board's decision. Since we find that the AJ made no error that would support a reversal of the Board's decision, we affirm.
 
 
 
 [1]
 Cooper was suspended for 14 days effective 2 March 1992 for being AWOL, failure to follow proper leave procedures, failure to obey a direct order, and making threatening remarks. Effective 4 May 1992, Cooper was again suspended for 14 days for failure to obey a direct order. Although these two prior disciplinary actions are not directly in issue here, Jackson considered them when he proposed the removal of Cooper in December of 1992. Thus, prior to his removal, Cooper had been suspended at least twice for 14 days and at least once for 30 days, all in 1992